1  Albert S. Golbert (SBN 28336)
   albert@golbertlaw.com
2  Davis P. Goodman (SBN 119822)
   davis@golbertlaw.com
3  Golbert & Associates
   One Bunker Hill, Eighth Floor
4  601 West Fifth Street
   Los Angeles, CA 90071-2094
5  Telephone: 1-213-891-9641
   Facsimile: 1-213-623-6130
6
7  Attorneys for Plaintiff Kukdong
   Corporation
8
9              UNITED STATES DISTRICT COURT
10            CENTRAL DISTRICT OF CALIFORNIA
11
12 KUKDONG CORPORATION,              Case No.
13                     Plaintiff     COMPLAINT FOR CONVERSION
                                     OF PROPERTY AND TRESPASS TO
14       vs.                         CHATTELS
15 NETWORK SHIPPING
   INTERNATIONAL, INC. (d/b/a PILLAR
16 TRANS CALIFORNIA) and DOLSE
   TRUCKING, INC.,
17
                       Defendants
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Kukdong Corporation alleges upon information and belief:

## I.   JURISDICTION AND VENUE

1. This Court has jurisdiction over this action under 28 U.S.C. §1332 as this action involves a plaintiff that is a corporation incorporated under the laws of The Republic of South Korea, with its principal place of business in Seoul, South Korea and defendants each of which are corporations incorporated under the laws of the State of California, with their principal places of business in the State of California. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

2. Venue is proper in the Central District of California because each of the Defendants' principal places of business are in the Central District.  28 U.S.C. §1391(b) & (d).  Further, the majority of the events or omissions set forth in this Complaint occurred in the Central District.  28 U.S.C. §1391(a)(2)

## II.   PARTIES

### Defendants

3. Defendant Network Shipping International, Inc., d/b/a Pillar Trans California (this fictitious business name was filed with Los Angeles County on December 14, 2010, Legacy Document Number 20101844720), ("Network Shipping") is a company existing under and by virtue of the laws of the State of California with its principal place of business located in Gardena, California.  Plaintiff

COMPLAINT FOR CONVERSION OF PROPERTY AND TRESPASS TO CHATTELS

is informed and believes, and on that basis alleges, that Defendant provides transportation services.

4.  Defendant Dolse Trucking is a company existing under and by virtue of the laws of the State of California with its principal place of business located in Carson, California ("Dolse Trucking").  Plaintiff is informed and believes, and on that basis alleges, that Dolse Trucking provides freight hauling and storage services.

5.  Network Shipping served as the forwarding agent for the carriage by sea of the goods described in that certain Bill of Lading dated December 2, 2012 (the "Goods") listing Plaintiff as the Consignee, a true and correct copy of which is attached hereto as Exhibit A (the "Bill of Lading").

6.  Network Shipping was asked to deliver the Goods to the Notify Party listed on the Bill of Lading.

7.  Subsequent to the delivery, the Notify Party notified Kukdong Corporation that it did not want the Goods.  As a result, Kukdong Corporation authorized Novelint, Inc. (also a California corporation with its principal place of business in Los Angeles, California) ("Novelint") to act as its agent to arrange for Kukdong Corporation's Goods to be picked up from the Notify Party.  Novelint asked Network Shipping to pick up Kukdong Corporation's Goods, the *same* Goods that Network Shipping had delivered *to* the Notify Party (as described in the Bill of Lading), *from* the Notify Party pending a further request for delivery.  Kukdong Corporation has no ownership in nor legal affiliation with Novelint.

**COMPLAINT FOR CONVERSION OF PROPERTY AND TRESPASS TO CHATTELS**

8.  Network Shipping then instructed Dolse Trucking to pick up the above-mentioned Goods and take them to a Dolse Trucking warehouse.  Both Network Shipping and Dolse Trucking had copies of the Return Invoice, which was required to pick up the Goods from the Notify Party, which clearly identifies Kukdong Corporation as the Vendor.  A true and correct copy of such Return Invoice is attached hereto as Exhibit B.

9.  At all times, Network Shipping was aware that the consignee and owner of the Goods in question was Kukdong Corporation, particularly since Network Shipping was the forwarding agent listed on the Bill of Lading, in which Kukdong Corporation was listed as the consignee, and since Network Shipping was informed specifically that Kukdong Corporation was the owner of the Goods, orally and in writing.

10.  Plaintiff is informed and believes and on that basis alleges that at all times relevant to the Complaint, Dolse Trucking was aware that Kukdong Corporation was the owner of the Goods in question (see also paragraph 8, above).

11.  At least as of August 1, 2013, and most likely well before that date, Network Shipping became aware of the fact that Kukdong Corporation wanted its Goods back to sell to a subsequent buyer.  Network Shipping refused to return the Goods or to allow access to the Goods (which was also necessary in order to provide samples to this subsequent buyer).  In fact, on August 20, 2013, Network Shipping's counsel sent a letter to Kukdong, Inc (Korea) (sic), c/o Kukdong Apparel (America), Inc. refusing to return the Goods, referencing a letter sent by Kukdong Apparel to

**COMPLAINT FOR CONVERSION OF PROPERTY AND TRESPASS TO CHATTELS**

Network Shipping dated August 1, 2013 that had demanded the return of Kukdong Corporation's Goods. Network Shipping demanded payment of what it claimed were outstanding debts from Novelint before it would release Kukdong Corporation's Goods. A true and correct copy of the letter received from Network Shipping's counsel is attached hereto as Exhibit C. (Network Shipping's refusal letter also included their copy of the Bill of Lading, again showing that Network Shipping knew that Kukdong Corporation was the consignee.) (Kukdong Apparel (America) is a separately constituted California subsidiary of Kukdong Corporation with its principal place of business in Artesia, California ("Kukdong Apparel")).

12. Plaintiff is informed and believes and on that basis alleges that Dolse Trucking knew of Kukdong Corporation's request for the return of the Goods and yet did not return and has not returned the Goods to Kukdong Corporation.

13. On September 13, 2013, Counsel for Plaintiff emailed and mailed via certified mail, a letter to Network Shipping's counsel again demanding the release of the Goods and again informing Network Shipping that Kukdong Corporation was listed as the consignee, had the original bill of lading and had good title to the Goods. In addition, this Defendant was again informed that its failure to release these Goods to their owner, Kukdong Corporation, was damaging Kukdong Corporation and that Kukdong Corporation intended to seek compensation from Network Shipping. Furthermore, although it was not relevant to Network Shipping's wrongful refusal to return Kukdong Corporation's Goods, the letter stated that Kukdong Corporation had

**COMPLAINT FOR CONVERSION OF PROPERTY AND TRESPASS TO CHATTELS**

no legal affiliation with Novelint and that even if it had, no warehouse receipt had been issued stating that a lien was being claimed for charges and expenses in relation to <u>other</u> goods (nor was there any storage agreement) as required by Cal. Com. Code §7209.  In any case, Kukdong Corporation had and has no ownership in nor legal affiliation with Novelint.  A true and correct copy of this letter is attached hereto as Exhibit D.  A copy of such letter was also sent to Dolse Trucking on September 24, 2013.  (Kukdong Corporation also offered to pay appropriate warehousing charges as outlined in its letter.  In fact, Network Shipping was paid over 10 months ago, in January 2013, for its freight forwarding services with respect to the Goods.)

14.  On September 26, 2013, counsel for Network Shipping wrote to both counsel for Kukdong Corporation and a representative of Kukdong Apparel again refusing to return the Goods held by Network Shipping and/or Dolse Trucking.  A true and correct copy of the letter received by counsel to Kukdong Corporation is attached hereto as Exhibit E.

15.  To date, Network Shipping has refused to release the Goods.

**Plaintiff**

16.  Plaintiff Kukdong Corporation is a corporation incorporated under the laws of The Republic of South Korea, with its principal place of business in Seoul, South Korea.

17.  Plaintiff Kukdong Corporation has, by Defendants' actions, been deprived of the rightful use of its property and has been damaged thereby, including, without

limitation, by its inability to sample and to sell the Goods to other buyers. As a proximate result of Defendants' conduct, Plaintiff has lost both the value of the Goods and the profit to be earned from their sale.

18. Plaintiff Kukdong Corporation has made multiple requests for the return of the Goods, all to no avail. In fact, such requests have been specifically refused.

**First Claim Brought by Plaintiff Kukdong Corporation against all Defendants alleging conversion of Plaintiff's property**

19. Plaintiff Kukdong Corporation realleges and incorporates by reference the allegations set forth in paragraphs 1 through 18, above.

20. Plaintiff owns the Goods.

21. Defendants, and each of them, intentionally and substantially interfered and continue to interfere with Kukdong Corporation's Goods by taking possession of the Goods, by preventing Kukdong Corporation from having access to the Goods and by refusing to return the Goods after Kukdong Corporation demanded the Goods' return.

22. The holding of the Goods by Defendants, and each of them, was and continues to be deliberate.

23. Kukdong Corporation did not consent.

24. Kukdong Corporation was and continues to be harmed.

25. Defendants, and each of them, engaged and continue to engage in conduct that has been a substantial, proximate factor in causing Kukdong Corporation's harm.

COMPLAINT FOR CONVERSION OF PROPERTY AND TRESPASS TO CHATTELS

26. Conversion is a strict liability tort. Defendant's good faith, lack of personal knowledge and motive are ordinarily immaterial. As the oft cited case, <u>Burlesci v. Petersen</u>, stated, "Conversion is a strict liability tort. The foundation of the action rests neither in the knowledge nor the intent of the defendant. Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortuous. Therefore, the question of the defendant's good faith, lack of personal knowledge, and motive are ordinarily immaterial" (<u>Burlesci v. Petersen</u>, 68 Cal.App.4th 1062, 1066 (1998) internal citations omitted); see also <u>Poggi v. Scott</u>, 167 Cal. 372, 375 (1914) ("The general rule is that 'the foundation of the action…rests neither in the knowledge nor the intent of the defendant. It rests upon the unwarranted interference by defendant with dominion over the property of the plaintiff from which injury to the latter results'") and <u>Enterprise Leasing Corp.</u>, 231 Cal.App.3d 737, 748). In the instant case, Defendants have lacked good faith, have had personal knowledge that the Goods belong to Kukdong Corporation, and, at least as far as Defendant Network Shipping is concerned, has had as its motive for refusing to return the Goods to Kukdong Corporation the forcing of Novelint to pay claimed past due invoices to Network Shipping —this motive has been admitted by Network Shipping in writing to Kukdong Corporation. (Such blackmail not only amounts to conversion, but in <u>Burlesci</u> itself, Defendant Cummings was found to have converted the Plaintiff's property despite Cummings' belief that he was rightfully holding such property because the Plaintiff owed him money. In addition, the Court in <u>Burlesci</u> stated that a

**COMPLAINT FOR CONVERSION OF PROPERTY AND TRESPASS TO CHATTELS**

"*security* agreement is required to establish a security interest" (citations omitted)

(emphasis in original) <u>Burlesci</u>, *supra*, at 1067, and then cited, in addition, California

Commercial Code section 9203's requirement that possession of the property be

gained "pursuant to" a security agreement (citations omitted), *Id.*, at 1068 (see Cal.

Com. Code §9203(b)(3)(B))).  Further emphasizing the requirement that there be a

written security agreement covering the specific goods at issue, the Court went on to

state that "[a] creditor may not breathe life into an otherwise unenforceable unwritten

security agreement [of which, in the instant case, there was none] by capturing the

collateral pursuant to an agreement having nothing to do with the security

arrangements." <u>Burlesci</u>, *supra*, at 1068.  This Circuit has cited <u>Burlesci</u> with approval

(see, e.g., <u>Chase Investment Services Corp. v. Law Offices of Jon Divens &</u>

<u>Associates, LLC</u>, 748 F.Supp.2d 1145, 1178 (2010) (C.D. Cal); <u>Bailey v. County of</u>

<u>San Joaquin</u>, 671 F.Supp.2d 1167, 1178 (2009) (E.D. Cal)).

     27.  Plaintiff has been damaged by Defendants' conduct and actions and the

detriment to Plaintiff includes, without limitation, first, the value of the Goods at the

time of the conversion, with interest from that time, or, an amount sufficient to

indemnify Plaintiff for the loss which is the natural, reasonable and proximate result

of the wrongful acts complained of herein and second, a fair compensation for the

time and money properly expended in pursuit of the Goods (including, but not limited

to attorneys' fees) (see Cal. Civ. Code §3336).

**COMPLAINT FOR CONVERSION OF PROPERTY AND TRESPASS TO CHATTELS**

**Second Claim Brought by Plaintiff Kukdong Corporation against all Defendants alleging trespass to chattel**

28.  Plaintiff Kukdong Corporation realleges and incorporates by reference the allegations set forth in paragraphs 1 through 27, above.

29.  Even if, arguendo, the Defendants' conduct does not consititute conversion (which Plaintiff maintains that it does—see e.g., Restatement Second of Torts, section 222, comment (a):  "Normally, any dispossession is so clearly a serious interference with the right of control that it amounts to a conversion; and it is frequently said that any dispossession is a conversion"), Defendants' conduct does, in the alternative, constitute trespass to chattel.

30.  Kukdong Corporation owns the Goods and has a right to possess them.

31.  Defendants, and each of them, intentionally interfered and continue to interfere with Kukdong Corporation's use or possession of the Goods.

32.  Kukdong Corporation did not consent.

33.  Kukdong Corporation was and continues to be harmed.

34.  The conduct of each of the Defendants was and continues to be a substantial and proximate factor in causing Kukdong Corporation's harm.

35.  Defendants have consistently refused to return the Goods despite numerous requests that they do so.

36.  Trespass to chattel "lies where an intentional interference with the possession of personal property has proximately caused injury," Thrifty-Tel, Inc. v.

COMPLAINT FOR CONVERSION OF PROPERTY AND TRESPASS TO CHATTELS

Bezenek, 46 Cal.App.4th 1559, 1566-67 (1996) (see also, Itano v. Colonial Yacht Anchorage, 267 Cal.App. 84, 89-90 (1968)). The factor to be considered in distinguishing conversion from trespass to chattel is how substantial has been the interference of the defendants with the plaintiff's property. In the instant case, Plaintiff alleges that the interference was and has been intentional and was and has been substantial enough to sustain a finding of conversion, but even if, arguendo, it does not, the conduct of Defendants, and each of them, certainly amounted and amounts to "trespass or intermeddling" with Kukdong Corporation's Goods. Id. at 90. The remedy of the action of trespass remains, even for minor and unimportant dispossessions, "such as taking another man's hat by mistake and returning it within two minutes upon discovery of the mistake....In such a case the remedy of the action of trespass remains, and will allow recovery of damages for the interference with the possession" (Restatement Second of Torts, supra).

### Prayer for Relief

WHEREFORE, Plaintiff requests the following relief against Defendants, and each of them, as follows:

   1. For an order that the Goods immediately be restored to Plaintiff;

   2. For a judgment for any and all financial losses and damages sustained by Plaintiff, with interest, in such amounts as are proven at trial;

   3. For a judgment for the fair market value of the Goods, plus interest;

COMPLAINT FOR CONVERSION OF PROPERTY AND TRESPASS TO CHATTELS

4.  For exemplary damages (see <u>Krieger v. Pacific Gas & Electric Co.</u>, 119 Cal.App.3d 137, 148, internal citation omitted (1981) and <u>Haun v. Hyman</u>, 223 Cal. App. 2d 615, 620 (1963));

5.  For fair compensation for the time and money properly expended in pursuit of the Goods, including, but not limited to, attorneys' fees;

6.  For all costs of suit incurred herein; and

7.  For such other and further relief as the Court deems just and proper.

GOLBERT & ASSOCIATES

By: _____
Albert S. Golbert
Davis P. Goodman
Attorneys for Plaintiff Kukdong
Corporation

DATED: November 20,  2013

**COMPLAINT FOR CONVERSION OF PROPERTY AND TRESPASS TO CHATTELS**

EXHIBIT A



# BILL OF LADING

| SHIPPER / EXPORTER | | BOOKING NO. | | B/L NO. |
|---|---|---|---|---|
| PT SABENA CIPTA<br>JL.RAYA NAROGONG KM 7 CIPENDAWA RT 001/RW005<br>KEL.BOJONG MENTENG KEC.RAWA LUMBU INDONESIA<br>TEL : 62 21 8611055 | | | | ZMTF21204764 |

**EXPORT REFERENCES**

| CONSIGNEE | FORWARDING AGENT REFERENCES |
|---|---|
| KUKDONG CORPORATION<br>7-8TH FLOOR DONGBO BUILDING 405<br>CHEON HO-DAERO (JANGAN DONG)<br>DONGDAEMUN-GU, SEOUL KOREA | PILLAR TRANS CALIFORNIA<br>18726 S.WESTERN AVE., SUITE #317<br>GARDENA CA 90248<br>PHONE: 310-767-1010 FAX: 310-767-1110 |

**POINT AND COUNTRY OF ORIGIN**

JAKARTA, INDONESIA

| NOTIFY PARTY | DOMESTIC ROUTING / EXPORT INSTRUCTIONS |
|---|---|
| FOREVER 21, INC<br>3880 N.MISSION ROAD<br>LOS ANGELES, CA 90031 | |

COPY NON NEGOTIABLE

| PRE-CARRIAGE BY | PLACE OF RECEIPT | |
|---|---|---|
| SINAR SUMBA 219 | JAKARTA, INDONESIA | |
| OCEAN VESSEL / VOYAGE / FLAG | PORT OF LOADING | OUTWARD INLAND ROUTING |
| HYUNDAI SINGAPORE 053E | JAKARTA, INDONESIA | |
| PORT OF DISCHARGE | FOR TRANSSHIPMENT TO | PLACE OF DELIVERY | FINAL DESTINATION (FOR THE MERCHANTS REF) |
| LOS ANGELES, CA USA | | LOS ANGELES, CA USA | |

PARTICULARS FURNISHED BY SHIPPER

| CONTAINER NO. / SEAL NO.<br>MARKS AND NUMBERS | NO. OF CONT<br>OR OTHER PKGS. | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| HANDLE WITH CARE<br><br>CARTON #<br>P.O.:<br>ITEM CODE:<br>STYLE :<br>COLOR ;<br>SIZE :<br>COUNT :<br>TOTAL PACK #<br>TOTAL QTY ;<br>MADE IN INDONESIA<br><br>CONTAINER#/SEAL#:<br>BMOU4151305/HMMC267353 | 1 X 40'<br>SUBST | SHIPPER' S LOAD AND COUNTS<br>1 X 40' SUBST CONTAINER SAID TO CONTAIN<br>1,340 CARTON = 48,131 PIECES OF<br>LADIES KNIT TOP/SSLV 100% RAYON / 100%<br>NYLON (LACE)<br>PO.NO.12056104<br>STYLE NO.122E07660<br><br>    NET WEIGHT : 6,497.69 KGS<br><br><br>    " FREIGHT COLLECT" | GW: 7,147.45 KGS<br><br>MEAS : 31.658 CBM<br><br>ON BOARD DATE :<br>DEC 02,2012 | |

| TOTAL NO. OF CONTAINERS<br>OR PACKAGES (IN WORDS) | ONE FORTY FOOT DRY CONTAINER(S) ONLY |
|---|---|

| FREIGHT AND CHARGES<br>REVENUE TONS RATE PER | PREPAID | COLLECT | |
|---|---|---|---|
| FREIGHT COLLECT AS ARRANGED | | | IN ACCEPTING THIS BILL OF LADING, the shipper, owner and consignee of the goods, and the hold of the bill of lading expressly accept and agree to all its stipulations, exception and conditions, wheth written, stamped or printed, as authorized to waive any of the provisions of the within clauses.<br>IN WITNESS WHEREOF, the master agent of the said ship has affirmed to bills of lading, all of this ten and date. ONE of which being accomplished, the others to stand void. |

SURRENDERED   *Patrick Kim*

DATED AT _____ December 02, 2012

MO.   DAY   YEAR

**PT. ZIMMOAH MARINE TRANS**

BY   AS AGENT FOR THE CARRIER

**TOTAL CHARGES**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT B

F O R E V E R                    **RETURN INVOICE**

Mission Warehouse
3880 North Mission Road
Los Angeles, CA 90031                     Date  2/22/2013
TEL. (213) 741-8834  Contact:  Patricia
TEL. (213) 741-8883  Contact:  Clara
TEL. (213) 763-0229  Contact:  Jackie
FAX. (213) 741-8900
RETURN.M@FOREVER21.COM

VENDOR: KUKDONG CORP.
Item Code : 22306281
Style # : 122E07660
P.O. # : 12056104
Description : CLOTHING

| COLOR | SIZE | QTY |
|---|---|---|
| IVORY | S | 7,624 |
| | M | 5,645 |
| | L | 3,713 |
| | | |
| CORAL | S | 7,340 |
| | M | 5,505 |
| | L | 3,670 |
| | | |
| SKY BLUE | S | 5,832 |
| | M | 4,374 |
| | L | 2,916 |
| | | |
| | | |
| | | |
| | | |
| | | 46,619 |

Type of Return: BALANCE QTY.
Detail Reason: BALANCE QTY.
Due Date: 2/22/2013

PRINT:            SIGNATURE:            DATE

CLARA

EXHIBIT C

LAW OFFICES OF

Telephone (213) 251-5480
Facsimile (323) 953-1171

**KENNETH W. RALIDIS**
a professional law corporation
3435 Wilshire Blvd., 27ᵗʰ Floor
Los Angeles, California 90010

ken@ralidislaw.com
www.ralidislaw.com

August 20, 2013

Sang Ki Byun, President
Kukdong, Inc. (Korea)
"Caz" Byun and Sean Byun
Officers, Agents for Service, Owners
Kukdong Apparel (America), Inc.
17100 Pioneer Blvd., Suite 230
Artesia, California 90701

Re:   Disputes by, between and among Kukdong (Korea), Kukdong (America), Novelint, Inc., Pillar Trans California, Inc., et al.

Dear Mr. Byun:

My client, Pillar Trans California, Inc. [hereafter, "PTC"], advises that it received last week a letter dated August 1, 2013 which read as follows:

"Dear Ms. Sim [*sic.*]:

Kukdong Apparel (America), Inc. Is a branch office of Kukdong Corporation in Korea. [¶] This letter is in regards to PO # 12056104. [¶] As a representative of Kukdong Apparel (America), Inc. I write this letter to notify you that if the goods those are held by you [*sic.*] do not get released within 15 days of this letter receipt, I will take necessary legal action. [¶] You do not have the ownership of the goods you held and therefore I request you to release them.

Best regards, Caz Byun"

My firm represents Pillar Trans California, Inc. in a related legal matter of which I'm certain that you are well aware.

My research reveals that Myunghee "Caz" Byun aka Seongwon Byun, Seong Won Byun & Seong-Won Byun is a blood- or marriage-relative of Sang Ki ["Sean"] Byun aka Sang Ki Pyon [hereafter, "SANG"], who is the owner of Kukdong Corporation (registered in the Republic of South Korea) [hereafter, "KUK.KOREA"].  Although your letter indicates that Kukdong Apparel (America), Inc. [hereafter, "KUK.USA"] is a "branch office" of KUK.KOREA, it is in fact a California corporation registered to do business in this state and located at 17100 Pioneer Blvd., Suite 230, Artesia, California 90701, formed on July 27, 1999.  Its Secretary-of-State-issued entity Nº is C2143821.  Its agent for

d:\PillarTransCA\SanKiByunAugust20-2013

Sang Ki Byun, Kukdong, Inc. (Korea)
Caz Byun, Sean Byun, Kukdong Apparel (America)
August 20, 2013
Page 2

service of process is Sean Byun [hereafter, "SEAN"], whose service address is represented to the State of California to be 2100 Main Street, Suite 200, Irvine, California 92614.

KUK.USA does not appear to have the legal authority or standing to make the demand made in the letter, or to sue anyone in this matter.  Please provide me with legal proof of the relationship between KUK.KOREA and KUK.USA, if any.

Research further reveals that the owner of Novelint, Inc. [hereafter, "NOVELINT"], another California corporation [registered to do business in this state and ostensibly located at 4322 Wilshire Blvd., Suite 105, Los Angeles, California 90010; formed on March 29, 2010; Secretary-of-State-issued entity Nº C3285853], is Joohwan ["Scott"] Lee [hereafter, "SCOTT"], is the son-in-law of SANG.  We are still trying to determine exactly what the familial relation is between SANG and SEAN.

In any case, you are well aware that NOVELINT owes PTC around $1.4 million.  Our current collection investigation reveals that SCOTT is a legal alter ego of NOVELINT, which means that the debts of NOVELINT will be treated as the debts of SCOTT for legal purposes.

Further, we are developing evidence that KUK.KOREA, KUK.USA, SANG and SEAN are also alter ego conduits of NOVELINT's assets, and that NOVELINT is a shell corporation set up by SCOTT for purposes of disguising ownership, in order to evade creditors.

More research reveals that SCOTT has a long history of evading creditors through shell corporations which are conduits for assets, including companies such as SD America, Inc. (dissolved) and SL Trade, Inc. (active) (also known as SL Trading, Inc.) [hereafter, "SDT"], both of which are also California corporations owned by SCOTT, and which also served as his alter egos for purposes of evading creditors.  The latter was also located at 4322 Wilshire Blvd., Suite 105, Los Angeles, California 90010; and its formed March 24, 2011; Secretary-of-State-issued entity Nº C3362705], is also SCOTT.

We have also discovered that SCOTT has been colluding wrongfully with Seon Kyung ["Harriet"] Lee [hereafter, "H.LEE"], who is a terminated employee of Forever 21 [hereafter, "F21"], Los Angeles, and who was the person who instructed that all orders shipped to F21 must be shipped via NOVELINT, using my client, whom was considered an expendable entity for freight costs.

It is PTC's contention that, via a fraudulent scheme, two companies, NOVELINT and SLT owe my client, PTC, and evaded paying PTC, the respective principal sums of $1,286,140.31 and $70,108.88.  This was intentional.  In fact, both SCOTT and H.LEE have recently made numerous express (false) representations that they would honor

Sang Ki Byun, Kukdong, Inc. (Korea)
Caz Byun, Sean Byun, Kukdong Apparel (America)
August 20, 2013
Page 3

the debt and pay it off, attempting to fraudulently induce PTC into releasing unpaid shipments to the other alter ego entities, KUK.KOREA, KUK.USA, SANG and/or SEAN.

Thus, the letter I reviewed came as little surprise and it strengthens my strong suspicions that the freight arrangements were intentionally set up to defraud creditors. We are working to determine other creditors who may have been similarly deceived, but my sole focus at the moment is getting payment to PTC on the ostensible accounts of NOVELINT and SDT.

Further research into the corporate histories reveals that SD America was an initial entity that SCOTT started, apparently with H.LEE, and because of customs violations the entity essentially changed names and transferred its assets without consideration to NOVELINT. Also, SLT was apparently created to act as one of F21's local vendors to receive POs. As part of their scheme, H.LEE became an F21 employee in order to be in a position to direct freight companies to falsify shipping documentation such as bills of lading and invoices.

Further research into the shipping documentation reveals that NOVELINT is basically a shell intermediary company which arranged for shipping from the vendors (located in Asia) to the F21, using KUK.KOREA as a straw company "consignee" (it is actually a vendor) on shipping documents. In practice, NOVELINT submitted customs clearance documents to the customs broker nominated by F21, and arranged to make deliveries to F21. In her job with F21, H.LEE was in a position to instruct my client to place NOVELINT's name on invoices, even as it arranged to place the straw KUK.KOREA on freight documents as "consignee", thereby obscuring actual ownership.

Because F21's PO terms are DDP (duty & delivery inclusive) to F21's door and because H.LEE knew that F21 does not allow DDP vendors to clear customs under F21's name, H.LEE arranged for vendors to file foreign entity tax ID numbers with U.S. Customs, and to instruct that merchandise be cleared under each vendor's name. The result is that on freight documents the relevant vendor's name [in this case, KUK.KOREA] is listed as "Consignee" and the "Notify" party is listed as Retailer. The actual manufacturer in each country/origin is indicated as "Shipper".

But the reality is that the "Vendor" should be the "Shipper", and "Retailer" should be listed as the "Consignee". The scheme was intended to permit the straw "consignee" to claim ownership of the merchandise being held (due to unpaid shipping fees) by my client. Likely as a result of its investigation into these undisclosed and in apparent fact actively concealed connections, F21 terminated H.LEE.

Your letter refers to a batch of invoices from PTC to NOVELINT which also involve

d:\PillarTransCA\SanKiByunAugust20-2013

Sang Ki Byun, Kukdong, Inc. (Korea)
Caz Byun, Sean Byun, Kukdong Apparel (America)
August 20, 2013
Page 4

KUK.KOREA as an apparent straw consignee.  The aggregate amount of those invoices
is around $130,000.  Because F21 cancelled some orders, PTC is holding goods, as a
result of unpaid freight charges around ten times the amount of the invoices in issue,
which KUK.KOREA is now directing that PTC release to its apparent alter ego debtor,
NOVELINT, on which shipment(s) NOVELINT owes my client around $130,000.00.

     The purpose of the release, consistent with known patterns and practices of
NOVELINT, is that NOVELINT would thereafter sell the merchandise via closeout sales
(sales at a much cheaper price than the value listed on invoices).  It would appear that
any permission granted by F21 for any such release at KUK.KOREA's insistence arose
because H.LEE & KUK.KOREA actively concealed the connections between KUK.KOREA
and NOVELINT, SCOTT, SANG, SEAN, KUK.USA, SLT and H.LEE.  It also appears that
this is far from the first time that KUK.KOREA issued such demands directly for the
benefit of NOVELINT to conduct closeout sales.

     Neither KUK.KOREA nor NOVELINT has legally acted in a manner consistent with
consignee status, and thus their claims on ownership are suspect at best.  Generally,
the legal requirements for ownership transfer have not been met.  Thus, KUK.KOREA's
demand for release of the merchandise to its alter-ego intermediary, which it knows has
never paid the freight charges, appears to be improper.  Further, *California Commercial
Code* §2702(1) provides that:

     "Where the seller discovers the buyer to be insolvent he may refuse delivery except for
     cash including payment for all goods theretofore delivered under the contract, and stop
     delivery under this division."

     Such rights have been held to apply to freight providers as well under California
and United States law.  Similarly, *California Commercial Code* §2703 provides that:

     "Where the buyer wrongfully ... fails to make a payment due on or before delivery ... the
     aggrieved seller may (a) Withhold delivery of such goods; (b) Stop delivery by any bailee
     as hereafter provided (Section 2705); ... (d) Resell and recover damages as hereafter
     provided (Section 2706); ... (f) Cancel."

     There can be no question that NOVELINT is insolvent and has been severely
undercapitalized.

     Other sections of the *Commercial Code* also allow PTC to withhold delivery of
the goods upon your request, including §2705 ["(1) ... may stop delivery of goods in the
possession of a carrier or other bailee when he discovers the buyer to be insolvent ... and may
stop delivery of ... load ... or larger shipments of express or freight when the buyer ... fails to

d:\Pillar\TransCA\SanKiByunAugust20-2013

Sang Ki Byun, Kukdong, Inc. (Korea)
Caz Byun, Sean Byun, Kukdong Apparel (America)
August 20, 2013
Page 5

make a payment due before delivery or if for any other reason the seller has a right to withhold or reclaim the goods ... (3)(b) ... but the seller is liable to the bailee for any ensuing charges or damages ... (d) A carrier who has issued a nonnegotiable bill of lading is not obliged to obey a notification to stop received from a person other than the [non-straw] consignor"], §2706 (relating to right of sale and remedies), §2707 (relating to rights of those in the position of a seller; *i.e.*, owed sums for the merchandise), and so on.

I invite you to provide me with evidence and legal authority proving your actual, legal and/or equitable ownership of the merchandise (rights which supercede PTC's rights to payment), and which tends to prove that my client's contentions regarding the alter ego, collusion and similar suspicions, are not well-founded.  We are willing to review your own contentions and proof which you might offer in support of same.

Your cooperation is requested in resolving this dispute.  If you have any questions or comments, please feel free to contact me as soon as is practical and before resorting to any legal actions of the type vaguely referenced in your letter.

Very truly yours,

LAW OFFICES OF K. RALIDIS

*Kenneth W. Ralidis*

Kenneth W. Ralidis, Esq.

cc: Client

d:\PillarTransCA\SanKiByunAugust20-2013

**ZURICH AMERICAN INSURANCE COMPANY**
1400 American Lane, Schaumburg, IL 60196


**ZURICH**

| In correspondence refer to these letters and numbers | Open Policy No.<br>OC5843526 | No.<br>Cert. 2352767001899 |
|---|---|---|

$304,428.58 USD     PLACE JAKARTA, INDONESIA                                                 DATE 12/02/2012

The Company, in consideration of an agreed premium and subject to the Terms and Conditions printed or stamped hereon and/or attached hereto, does insure, lost or not lost PT SABENA CIPTA for account of whom it may concern

in the sum of Three Hundred Four Thousand Four Hundred Twenty Eight And 58/100             U.S. Dollars

on new (described cargo)

LADIES GARMENT                                                     MARKS AND NUMBERS
valued at sum insured, to be shipped by Hyundai Singapore, V.053E or other vessel, and connecting conveyances at and    BL NO:ZMTF21204784
from JAKARTA, INDONESIA to LOS ANGELES, CA, U.S.A. leaving on or about 12/02/2012             REF NO:POI269637
Loss, if any, payable to KUKDONG CORPORATION or order.

<center>This Certificate of Insurance is subject to the terms and conditions of the above referenced Open Policy,<br>the terms and conditions set forth herein and also those printed on the back hereof</center>

Against all risks of direct physical loss or damage from any external cause, except those excluded by the F.C.&S. Warranty and the S.R.&C.C. Warranty and/or other warranties in this policy.

In addition to the foregoing, the following American Institute Cargo Clauses (A/R) January 1, 2004 are incorporated herein:
1. BRANDS AND TRADEMARKS 2. CRAFT/LIGHTER CHARGES 3. SEAWORTHINESS       4. CARRIER 5. BOTH TO BLAME 6. DURATION OF RISK – TRANSIT 7. DURATION OF RISK – SHIPMENTS RETURNED OR REFUSED 8. DURATION OF RISK – CONSOLIDATION/DECONSOLIDATION 9. LABELS CLAUSE 10. MACHINERY CLAUSE 11. LANDING, WAREHOUSING & FORWARDING CHARGES

Basic Exclusions: The policy does not cover (1) Ordinary Leakage, ordinary loss in weight or volume, or ordinary wear and tear. (2) Loss, damage, or expense: (a) Attributable to wilful misconduct of the Insured; (b) caused by inherent vice or nature of the insured property; (c) arising from insolvency or financial default of the owners, managers, charterers, or operators of the vessel; (d) resulting from insufficiency or unsuitability of packing or preparation of the insured property for the intended voyage. For the purposes of this clause, "packing" shall be deemed to include stowage into an overseas container but only when such stowage is carried out prior to commencement of the insured voyage or when performed by the Insured or his representative.

General Average Clause: General Average and Salvage Charges payable according to United States laws and usage and/or as per Foreign Statement and/or as per York-Antwerp Rules (as prescribed in whole or in part) if in accordance with the Contract of Affreightment. This Company shall be liable for only such proportion of General Average and Salvage Charges as the amount declared for insurance purposes (less particular average for which this Company is liable hereunder, if any) bears to the contributory value of the property insured, but in no event to exceed the applicable limit of liability.
Sue and Labor: In the event of loss or misfortune, it is the duty of the Insured and any assignee of the Insured's rights hereunder to take all reasonable measures to avert or minimize loss insured against by this policy and to ensure that all rights against third parties are preserved and exercised. The company shall be liable in full for the charges incurred under this Clause whether the combined amount of physical loss or damage and Sue and Labor Charges exceed the insured value or not.

Wherever the words "ship", "vessel", "seaworthiness", "ship or vessel owner" appear in this Certificate, they are deemed also to include the words "aircraft", "airworthiness", "aircraft owner".

<center>TERMS AND CONDITIONS</center>

The following Warranties shall be paramount and shall not be modified or superseded by any other provision included herein or stamped or endorsed hereon unless such other provision refers specifically to the risks excluded by these Warranties and expressly assumes the said risks.

F.C. & S. Warranty:    Notwithstanding anything contained herein to the contrary this insurance is warranted free from:
1) all consequences of capture, seizure, arrest, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise.
2) all loss, damage or expense, whether in time of peace or war, caused by (a) any weapon of war employing atomic or nuclear fission and/or fusion and/or reaction or radioactive force or matter or (b) any mine or torpedo.
3) all consequences of hostilities or warlike operations (whether there be a declaration of war or not) but this Warranty shall not exclude collision or contact with rockets or similar missiles (other than weapons of war) or with any fixed or floating object (other than a mine or torpedo) stranding, heavy weather, fire or explosion unless caused directly (and independently of the nature of voyage or service which the vessel concerned, or in the case of a collision, any other vessel involved therein is performing) by a hostile act by or against a belligerent power and for the purposes of this Warranty power includes any authority maintaining naval, military or air forces in association with a power.
4) all consequences of civil war, revolution, rebellion, insurrection or civil strife arising therefrom, or from the consequences of the imposition of martial law, military or usurped power, or piracy

S.R. & CC. Warranty:    Notwithstanding anything herein contained to the contrary, this insurance is warranted free from loss, damage or expense caused by or resulting from:
1) strikes, lockouts, labor disturbances, riots, civil commotion, or the acts of any person or persons taking part in any such occurrences or disorders.

Not valid and transferable unless countersigned by a duly authorized representative of the Company or Insured.         In Witness Whereof, ZURICH AMERICAN INSURANCE COMPANY has caused these presents to be signed by its President and attested by its Secretary,

_____ Signature

_____ Title

*Nancy D. Mueller*                            *Dennis Kerrigan*

Nancy D. Mueller                                 Dennis Kerrigan
ZURICH AMERICAN INSURANCE                   ZURICH AMERICAN INSURANCE
COMPANY                                          COMPANY

Countersigned
IN CASE OF LOSS SEE INSTRUCTIONS ON FOLLOWING PAGE

Original Certificate of Marine Insurance - (Original and Duplicate issued one of which being accomplished the other to be null and void)

(Continued)

2) vandalism, sabotage or malicious act, which shall be deemed also to encompass the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional

Delay Warranty: Warranted free of claim for loss of market or for loss, damage, expense or deterioration arising from delay, whether caused by a peril insured against or otherwise.

Nuclear Exclusion Warranty: Warranted that this certificate apply to any loss, damage or expense due to or arising out of, whether directly or indirectly, nuclear reaction, radiation or radioactive contamination, regardless of how it was caused. However, subject to all other provisions, if the peril of fire is insured herein, then direct physical damage to the insured property located within the United States or any territory of the United States or Puerto Rico by fire directly caused by the above excluded perils, is insured, provided that the nuclear reaction, radiation, or radioactive contamination was not caused, whether directly or indirectly, by any of the perils excluded by the F.C.&S. Warranty. Nothing in this clause shall be construed to cover any loss, damage, liability or expense caused by nuclear reaction, radiation or radioactive contamination arising directly or indirectly from the fire mentioned above.

Economic & Trade Sanctions: Whenever coverage provided by this Certificate would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

Extended Radioactive Contamination Clause with USA Endorsement (March 1, 2003): In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from, (1.1) ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel, (1.2) the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof, (1.3) any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter, (1.4) the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

Radioactive Contamination Exclusion Clause (U.S.A. ENDORSEMENT): This insurance is subject to the Institute Extended Radioactive Contamination Exclusion Clause (March 1, 2003) provided that if fire is an insured peril and where the subject matter insured or, in the case of a reinsurance, the subject matter insured by the original insurance, is within the U.S.A., its islands, onshore territories or possessions and a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1.1, 1.2, and 1.4 of the American Institute Extended Radioactive Contamination Exclusion Clause 1st March, 2003 any loss or damage arising directly from that fire shall, subject to the provisions of this insurance, be covered, EXCLUDING however any loss, damage, liability or expense caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

Chemical, Biological, Bio-Chemical, and Electromagnetic Terrorism Exclusion Clause (March 1, 2003): In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from an actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

Illicit Trade: Warranted free from any charge, expense, damage or loss which may arise in consequence of a seizure or detention for or on an account of any illicit or prohibited trade or any trade in articles, contraband of war, or in violation of any port rule or regulations

Notice of Loss: In case of loss or damage which may give rise to a claim under this Certificate same shall be reported as soon as practicable to the Company or its designated representatives. Failure to report loss or damage promptly shall invalidate any claim under this Certificate.

Payment of Loss: In case of loss, such loss is to be paid within thirty (30) days after satisfactory proof of loss, satisfactory proof of interest and adjustment thereof (the amount of premium, if unpaid, and all sums due to the Company from the insured when such loss becomes due being first deducted, and all sums coming due being first paid or secured to the satisfaction of this Company). Proof of loss to be authenticated by the Company or its designated representatives, and the insured and/or Certificate Holder agree to be examined under oath if so requested by the Company.

Partial Loss: In case of partial loss or damage insured against by this certificate, a separation of sound and damaged insured property shall be made and the amount of loss determined by: (1) and agreed percentage of depreciation, in which event the insured shall receive such percentage of the insured value of the damaged insured property, or, if there is no agreement; (2) sale of the damaged insured property, in which event the insured shall receive the difference between the insured value of the damaged insured property sold and the proceeds of the sale.

Subrogation: It is a condition of this insurance that upon payment of any loss the Company shall be subrogated to all the rights of the insured against third parties with respect to such loss. It is a further condition of this insurance that if the insured or any Claimant impairs or diminishes the rights to which the Company would be subrogated upon payment, the Company may deduct from such payment a sum equal to the estimated recovery lost by the reason of the insured's or Claimant's action or inaction.

Impairment of Recovery: In case of any agreement or act by the insured whether prior, simultaneous or subsequent hereto, whereby any such right of recovery of the insured for loss of or damage to any property insured hereunder is released, lost or impaired, which would, except for such agreement or act, upon acceptance of abandonment or payment of loss by the Company have inured to its benefit, the Company shall not be bound to pay any loss, but its right to retain or recover the premium shall not be affected. Warranted by the insured that this insurance shall be free from liability for loss or damage to property insured hereunder in the possession of any carrier or other bailee who may be liable therefor, either under Bills of Lading or otherwise. However, the Company agrees to pay to the insured the difference between the amount which would be collectible under this Certificate if it did not contain this warranty and the amount recoverable by the insured from such carrier or bailee, plus the costs and expenses of prosecuting the claim against such carrier or bailee. Pending collection from such carrier or bailee the Company agrees to advance to the insured as a loan without interest such amount as would be a claim under this Certificate if it did not contain this warranty, the repayment of which shall be conditional upon and only to the extent of any net recovery from such carrier or bailee.

Other Insurance:   a) If an interest insured hereunder is covered by other insurance which attached prior to the coverage provided by this Certificate, then this Company shall be liable for the amount in excess of such prior insurance; the Company to return to the insured premium equivalent to the cost of the prior insurance at the Company's rates

b) If an interest insured hereunder is covered by other insurance which attached subsequent to the coverage provided by this Certificate, then this Company shall nevertheless be liable for the full amount of the insurance without right to claim contribution from the subsequent insurance.

c) Other insurance upon the property of same attaching date as the coverage provided by this Certificate shall be deemed simultaneous, and this Company will be liable only for a ratable contribution to the loss or damage in proportion to the amount for which this Company would otherwise be liable under this Certificate and will return to the insured an amount of premium proportionate to such reduction of liability.

Constructive Total Loss Clause: No recovery for a Constructive Total Loss can be had hereunder unless the property insured is reasonably abandoned on account of its actual total loss appearing to be unavoidable or because it cannot be preserved from actual total loss without an expenditure which would exceed its value when the expenditure had been incurred.

Time for Suit: It is a condition of this Certificate that no suit, action or proceeding on this Certificate for the recovery of any claim shall be sustainable in any Court of Law or Equity unless the insured shall have fully complied with all the requirements of this Certificate and unless commenced within twelve (12) months next after the loss, provided that where such limitation of time is prohibited by the laws of the State wherein the policy is issued, then no suit or action shall be sustainable unless commenced within the shortest limitation permitted under the laws of State.

Choice of Law: The terms of this Certificate shall be construed pursuant to and the rights of the parties hereto shall be governed and controlled by, the general maritime law of the United States; in the absence thereof, the laws of the State of New York shall apply hereto.

This Certificate of Insurance is extended to include the following American Institute Clauses if so attached to the Open Policy:
S.R. & C.C. Endorsement-AIMU Endorsement for Open Policies (Cargo) Strikes, Riots and Civil Commotions (March 1, 2002)
War Risk Insurance- AIMU War Risk Open Policy (Cargo) December 2, 1993

NOTICE: This certificate is null and void, if the insurance attaches subsequent to the effective date of cancellation of the Open Policy referenced herein.

(Continued)

      INSTRUCTIONS IN CASE OF LOSS: In event of loss or damage believed covered, report same immediately to and arrange for survey with the Company's nearest Agent designated below, or should there be none nearby, to nearest Correspondent of the American Institute of Marine Underwriters, or Lloyd's Agent. Request representative to hold a survey and issue certificate stating cause and extent of the loss or damage. Carrier's representative should be requested to attend survey. Containers and contents should be preserved in condition received until survey completed, unless further damage would result. Survey fee is customarily paid by Consignee and may be included in any valid claim against the Company. In order to save any rights which you may have, claims must be immediately filed in writing against all parties in whose custody the loss or damage may have occurred. Copies of claims against such Carriers or custodians must be provided the Company's Agent and copy of Carriers reply should be forwarded to Agent as soon as received. If shipment is damaged or short weight at time of delivery, request immediate survey by Carrier, if practicable, and upon receipt of shipment, note the exact condition of the shipment as received. If Carrier will not deliver unless clean receipt is given, file immediate written protest with the Carrier describing condition of shipment when received and holding Carrier liable for any loss that may be disclosed by survey. The following documents must be forwarded to the Company's Agent: survey report "certificate of condition" (when issued by port or terminal authority or Carrier), copy of written claim upon Carrier, and Carrier's reply notice of claim (when available), ocean bills of lading, transshipment bills of lading or railway freight note (when applicable), shipper's invoice with packing specification or weight note attached, and original and/or duplicate Certificate of Insurance, properly endorsed by payee.

List of Surveyors:

In the event of a claim, please contact:
Lawrence Jeronimo
Phone: 917-534-4677
Fax: 917-534-4826
Email: larry.jeronimo@zurich.com

Joseph Bauer
Phone: 917-534-4876
Fax: 917-534-4826
Email: joseph.bauer@zurich.com

In the event of the need for a survey, please contact:
Desmond Serpanchy
Zurich San Francisco
560 Mission Street, Suite 2300, San Francisco, California
U.S.A. 94105
415-538-7208 Cell: 415-385-9726     415-538-7218
desmond.serpanchy@zurich.com
Attention agent: If a claim is reported to you, please notify Zurich immediately.

ZIMMOAH
PT. ZIMMOAH MARINE TRANS

# BILL OF LADING

**SHIPPER / EXPORTER**
PT SABENA CIPTA
JL RAYA NAROGONG KM 7 CIPENDAWA RT 001/RW005
KEL.BOJONG MENTENG KEC.RAWA LUMBU INDONESIA
TEL : 62 21 8611055

**BOOKING NO.**

**B/L NO.** ZMTF21204764

**EXPORT REFERENCES**

**CONSIGNEE**
KUKDONG CORPORATION
7-8TH FLOOR DONGBO BUILDING 405
CHEON HO-DAERO (JANGAN DONG)
DONGDAEMUN-GU, SEOUL KOREA

**FORWARDING AGENT REFERENCES**
PILLAR TRANS CALIFORNIA
18726 S.WESTERN AVE., SUITE #317
GARDENA CA 90248
PHONE 310-767-1010 FAX: 310-767-1110

**POINT AND COUNTRY OF ORIGIN**
JAKARTA, INDONESIA

**NOTIFY PARTY**
FOREVER 21, INC
3880 N.MISSION ROAD
LOS ANGELES, CA 90031

**DOMESTIC ROUTING / EXPORT INSTRUCTIONS**

| PRE-CARRIAGE BY | PLACE OF RECEIPT |
|---|---|
| SINAR SUMBA 219 | JAKARTA, INDONESIA |
| **OCEAN VESSEL / VOYAGE / FLAG** | **PORT OF LOADING** |
| HYUNDAI SINGAPORE 053E | JAKARTA, INDONESIA |
| **PORT OF DISCHARGE** | **FOR TRANSSHIPMENT TO** |
| LOS ANGELES, CA USA | |

**OUTWARD INLAND ROUTING**

| PLACE OF DELIVERY | FINAL DESTINATION (FOR THE MERCHANTS REF) |
|---|---|
| LOS ANGELES, CA USA | |

**PARTICULARS FURNISHED BY SHIPPER**

| CONTAINER NO. / SEAL NO. MARKS AND NUMBERS | NO. OF CONT OR OTHER PKGS. | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| HANDLE WITH CARE<br><br>CARTON #<br>P.O.:<br>ITEM CODE:<br>STYLE :<br>COLOR :<br>SIZE :<br>COUNT :<br>TOTAL PACK #<br>TOTAL QTY ;<br>MADE IN INDONESIA<br><br>CONTAINER#/SEAL#:<br>BMOU4151305/HMMC267353 | 1 X 40'<br>SUBST | SHIPPER' S LOAD AND COUNTS<br>1 X 40' SUBST CONTAINER SAID TO CONTAIN<br>1,340 CARTON = 48,131 PIECES OF<br>LADIES KNIT TOP/SSLV 100% RAYON / 100%<br>NYLON (LACE)<br>PO.NO.12056104<br>STYLE NO 122E07660<br><br>NET WEIGHT : 6,497.59 KGS<br><br>" FREIGHT COLLECT" | GW: 7,147.45 KGS<br><br>MEAS : 31.658 CBM<br><br>ON BOARD DATE :<br>DEC 02,2012 | |
| TOTAL NO. OF CONTAINERS OR PACKAGES (IN WORDS) | ONE FORTY FOOT DRY CONTAINER(S) ONLY | | | |

| FREIGHT AND CHARGES REVENUE TONS RATE PER | PREPAID | COLLECT |
|---|---|---|
| FREIGHT COLLECT AS ARRANGED | | |
| TOTAL CHARGES | | |

IN ACCEPTING THIS BILL OF LADING, the shipper, owner and consignee of the goods, and the holder of the bill of lading expressly accept and agree to all its stipulations, exception and conditions, whether written, stamped or printed, as authorized to waive any of the provisions of the within clauses.
IN WITNESS WHEREOF, the master agent of the said ship has affirmed to bills of lading, all of this tenor and date, ONE of which being accomplished, the others to stand void.

DATED AT ______ December 02, 2012
MO. DAY YEAR

PT. ZIMMOAH MARINE TRANS

BY ______

# F O R E V E R 21, Inc.

| BILL TO: FOREVER21, INC<br>3880 N. Mission Road<br>Los Angeles, CA 90031<br>xtin.import-ae@forever21.com | SHIP TO: FOREVER 21, INC<br>3880 N Mission Road<br>Los Angeles, CA 90031<br>PHONE 213-741-6886 | Order Date:<br>09/06/2012 | CO:<br>Indonesia | ITEM CODE: | 22306281 |
|---|---|---|---|---|---|
| | | **EX C.O Date:**<br>11/20/2012 | **LABEL:**<br>F21MAINB02 | | |
| | | **In House Date:**<br>12/31/2012 | Price Ticket: Y<br>Sticker: N | | |
| **VENDOR:** 11703 | | **Pay Type**<br>WIRE DDP | Hanger Tape: Y<br>Hang Tag: | | |
| | | **Ship Via:**<br>OCEAN | Terms:<br>OTHER | | |
| | | **Ship By:**<br>GARMENT ON HANGER   N<br>CONFORM TO F21PACKINGINSTRUCTION   Y | | ADEL LIM/MAIN | |

| Material | Pattern | Season |
|---|---|---|
| RAYON | LACED TRIM | |

| PO# | STYLE# | COST | DESCRIPTION | REMARKS | TREND | FS |
|---|---|---|---|---|---|---|
| 12056104 | 122E07660 | 5.75 | KNIT TOP/SSLV | NEW, XXI,F21,V21,CAN,WEB | | FF |
| | (USA) | | | | | |

| BUYER* LEGEND | | |
|---|---|---|
| USA=FOREVER21,INC | JPN=FOREVER21JAPAN RETAIL | CAN=FOREVER XXI,ULC | KOR=FOREVER21 KOREA RETAIL | EU=FOREVER21 GLOBAL B V | PHL=FOREVER AGAPE & GLORY |
| HKx=FOREVER21ASIA HOLDINGS LIMITED | ISR=FOREVER21ISRAEL LTD | MEX=FOREVER 21 MEXICO, S. DE R.L DE C.V | COL=ALAMEDA COLOMBIA S.A.S | | |

| CID | COLOR | *BUYER | LABEL | P/T | XS | S | M | L | XL | 1X | 2X | 3X | | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04 | IVORY | USA | F21 | USA | 0 | 6,320 | 4,740 | 3,160 | 0 | 0 | 0 | 0 | 0 | 0 | 14,220 |
| | | USA | XXI | USA | 0 | 176 | 132 | 88 | 0 | 0 | 0 | 0 | 0 | 0 | 396 |
| | | CAN | F21 | CAN | 0 | 360 | 270 | 180 | 0 | 0 | 0 | 0 | 0 | 0 | 810 |
| | | USA-W | F21 | USA | 0 | 676 | 507 | 338 | 0 | 0 | 0 | 0 | 0 | 0 | 1,521 |
| | | | | TOTAL | 0 | 7,532 | 5,649 | 3,766 | 0 | 0 | 0 | 0 | 0 | 0 | 16,947 |
| 05 | CORAL | USA | F21 | USA | 0 | 6,320 | 4,740 | 3,160 | 0 | 0 | 0 | 0 | 0 | 0 | 14,220 |
| | | USA | XXI | USA | 0 | 176 | 132 | 88 | 0 | 0 | 0 | 0 | 0 | 0 | 396 |
| | | CAN | F21 | CAN | 0 | 360 | 270 | 180 | 0 | 0 | 0 | 0 | 0 | 0 | 810 |
| | | USA-W | F21 | USA | 0 | 676 | 507 | 338 | 0 | 0 | 0 | 0 | 0 | 0 | 1,521 |
| | | | | TOTAL | 0 | 7,532 | 5,649 | 3,766 | 0 | 0 | 0 | 0 | 0 | 0 | 16,947 |
| 06 | SKY BLUE | USA | F21 | USA | 0 | 5,056 | 3,792 | 2,528 | 0 | 0 | 0 | 0 | 0 | 0 | 11,376 |
| | | USA | XXI | USA | 0 | 136 | 102 | 68 | 0 | 0 | 0 | 0 | 0 | 0 | 306 |
| | | CAN | F21 | CAN | 0 | 288 | 216 | 144 | 0 | 0 | 0 | 0 | 0 | 0 | 648 |
| | | USA-W | F21 | USA | 0 | 676 | 507 | 338 | 0 | 0 | 0 | 0 | 0 | 0 | 1,521 |
| | | | | TOTAL | 0 | 6,156 | 4,617 | 3,078 | 0 | 0 | 0 | 0 | 0 | 0 | 13,851 |
| | | | | TOTAL | | | | | | | | | | | 47,745 |

Vendor agrees that the information contained herein is confidential and proprietary, and represents and warrants it will not re-disclose the same to any third party without the express written consent of Forever 21 Inc ("F21"). Vendor also agrees that irreparable injury will result to F21 from any unauthorized disclosure or use of this information. Vendor expressly agrees that F21 shall be entitled, in addition to damages and other remedies provided by law, to all injunctive or other equitable remedy respecting such violation or continued violation. Vendor expressly warrants that the sale of products ordered and purchase thereon will not violate the trade property laws of the United States or any countries.

IMPORTANT: THE TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS PURCHASE ORDER ARE INCORPORATED HEREIN AND EFFECT YOUR LEGAL RIGHTS.
PLEASE READ AND REVIEW BOTH CAREFULLY BEFORE SIGNING THIS AGREEMENT THIS ORDER IS MARKED SAMPLE TO BE APPROVED.

**VENDOR SIGNATURE:** _____   **VENDOR NAME:** _____

THE LAW OF THE STATE OF CALIFORNIA INCLUDING THE UNIFORM COMMERCIAL CODES AS ENACTED BY THE STATE OF CALIFORNIA GOVERNS ALL SALES TO FOREVER 21 MERCHANDISING UNDER THE P.O

ANY DEVIATION TO ABOVE INSTRUCTIONS WILL RESULT IN A CHARGE BACK

| RELATED P.O.# | SHIP ADDRESS | IN HOUSE | QTY |
|---|---|---|---|
| 12056111 | BONDED (KOREA, JA | 12/19/2012 | 4,585 |
| 12056112 | VENDOR | 12/31/2012 | 1,635 |
| | | | |
| | | | |
| | | | |
| | | | |
| ITEM TOTAL | | | 53,965 |

vendor agrees that the information contained herein is confidential and proprietary, and represents and warrants that it will not disclose the same to any third party without the express written consent of Forever 21 Inc ("F21"). Vendor also agrees that irreparable injury will result to F21 from any unauthorized disclosure or use of the information. Vendor expressly agrees that F21 shall be entitled, in addition to damages and other remedies provided by law, to an injunction or other equitable remedy respecting such violation or continued violation. Vendor expressly warrants that the sale of products ordered and purchased herein will not violate intellectual property laws of the United States or any countries.

IMPORTANT: THE TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS PURCHASE ORDER ARE INCORPORATED HEREIN AND EFFECT YOUR LEGAL RIGHTS. PLEASE READ AND REVIEW BOTH CAREFULLY BEFORE SIGNING THIS AGREEMENT. THIS ORDER IS MARKED SAMPLE TO BE APPROVED.

**VENDOR SIGNATURE:** _____     **VENDOR NAME:** _____

THE LAW OF THE STATE OF CALIFORNIA INCLUDING THE UNIFORM COMMERCIAL CODES AS ENACTED BY THE STATE OF CALIFORNIA GOVERNS ALL SALES TO FOREVER 21 MERCHANDISING UNDER THE P.O.

ANY DEVIATION TO ABOVE INSTRUCTIONS WILL RESULT IN A CHARGE BACK

PRINTED ON   11/05/2012

**TERMS AND CONDITIONS IN ADDITION TO THOSE ON THE FRONT SIDE(last updated 12/02/2011)**

1. Forever 21, Inc. (Forever 21), referred to herein as "Agent," each of the entities for whom purchase is made on behalf of referred to herein as "Buyer," and the Vendor/Supplier listed on the reverse side hereof is referred to herein as "Seller." "Buyer" shall include Buyer's officers, and authorized agents. "Order" or "PO" shall refer to this Purchase Order Summary. Buyer is identified on the front side of PO under the column heading "Buyer *" along with the number of units the Buyer is purchasing. See "Buyer Legend" on the front side of PO to identify full legal name of Buyer.

2. Any selling agent or representative taking this Order for Seller shall be deemed to have full authority to bind Seller to its terms and conditions. This Order is accepted on the condition that the shipment(s) will be delivered to Buyer ON OR BEFORE the "In-House Date" by the "Ship Via" method as shown on the front side hereof. All shipments must be accompanied by original and legible invoice, packing slip, bill of lading, or other similar "Shipping Documents," in a sealed envelope, affixed to outside of package. All invoices and Packing List(s) MUST reference the Purchase Order Number, respective Buyer (as referred to on front side of PO under the column heading, "Buyer *") and style number, unit quantity, and unit cost, for each Buyer. Shipments received without necessary and proper Shipping Documents may be delayed before acceptance of delivery.

3 Delivery of merchandise under this Order shall not be deemed completed, nor shall title thereto pass to Buyer until the merchandise is inspected and accepted by the Buyer. The acceptance of merchandise however, shall not release or discharge Seller from liability for breach of an obligation, with respect to the merchandise. Notice of latent or patent defect(s) in the merchandise given by Buyer or its authorized Agent within 75 days after Buyer has actual knowledge of the defect shall be deemed timely notice to Seller, and Buyer's failure to inspect the merchandise prior to learning of the defect, or to note the defect on any prior inspection shall not be deemed a waiver of such defect.

4. The Net Terms begin from the Friday of the week following the merchandise receipt date or invoice, whichever is later. Terms are indicated on the front side hereof or net sixty (60) days, whichever is sooner.

5. Notwithstanding Agent's role in facilitating placement and shipment of the Order, collection of invoice amounts for Orders from Buyers, and disbursement of those amounts for ultimate payment to Sellers, Seller shall have no recourse against Agent for non-payment of invoiced amount by Buyer, or for any other disputed amounts in connection with the Order. Sole legal recourse by Seller for all matters in connection with this Order shall be exclusively against Buyer, and not against Agent.

6. If this Order is marked "Sale by Sample," "Sample to be Delivered" or "Sample to be Approved," or if the merchandise delivered is not as represented, Buyer may cancel same if the merchandise delivered does not fully conform to the sample (whether sample is provided at time of order or subsequently), or is not as represented in every respect as to quality, material, workmanship, appearance and otherwise. Buyer's decision as to conformity with the sample shall be final and binding as to the Seller. If this Order is marked "Sample to be Delivered" or "Sample to be Approved," or if this sale is otherwise made a "Sale by Sample," Buyer may also cancel this Order and return the merchandise to Seller if sample is not furnished before delivery or if Buyer disapproves such sample, it being understood that the Order is conditioned upon and subject to approval of such sample.

7. This Order may be revised or withdrawn by Buyer by mail (including electronic mail) and/or facsimile notice thereof to Seller within a reasonable time after placement of this Order to Seller, and prior to delivery of the merchandise described herein.

8. This Order may not be modified or terminated orally. Seller may NOT alter or substitute color, fabric, style, size, or any other specifications of the Order. No modification, termination or asserted waiver of any provision hereof shall be binding unless in writing and signed by the party against whom such modification, termination or waiver is sought to be enforced.

9. Discontinuance or substantial interference of Buyer's business and/or the particular department for which this Order is given, by reason of fire, flood, tempest, earthquake, war, labor dispute, act of God, embargo, civil commotion, governmental regulations or any cause beyond Buyer's control shall give Buyer the option to cancel in whole or part all unfilled Orders or parts thereof without any liability whatsoever.

10. The Seller will, in addition to any right Buyer may have, protect, indemnify and hold Buyer or its authorized Agent harmless against any and all liability, loss, injury and/or expense, including penalties, fines, court costs, awards, settlements, judgments, and attorney's fees, arising from or relating to any claim or cause of action alleged against Buyer (including without limitation claims or causes of action relating to or alleging infringement of any patent, trademark, or copyright; unfair trade or business practice; liability for the merchandise not being of merchantable quality or fit for the purpose intended; liability for the merchandise being sewn, manufactured (including materials used), packaged and/or sold in a manner contrary to any federal, state or local law), now pending or hereafter commenced, with respect to or arising from the sale by Seller, purchase by Buyer, and/or sale by Buyer to its customers, of the merchandise delivered hereunder. Such indemnification obligation shall survive acceptance by Buyer of the merchandise described herein and payment there for. In the event that Buyer pays for any of the aforementioned penalties, fines, costs, fees, expenses, settlements, judgments, Seller explicitly authorizes the Buyer the option to deduct such amounts, partial or full, from any and all payment payable to Seller, including from unrelated and separate PO and/or Orders, until entire amount is recovered. Buyer shall have the sole right to defend and settle any claims or causes of action with counsel of its choice. Seller will at all times cooperate in all reasonable respects with the Buyer and counsel in the conduct of the defense or settlement of any claims or causes of action giving rise to indemnification hereunder.

11. This Order is placed by Buyer with the understanding, and the Seller in accepting agrees and represents, that no federal, state, or local laws, rules or regulations have been or will be violated in the course of the manufacture, sale , or delivery of the merchandise described herein. This representation by Seller shall be interpreted broadly so as to include common law theories such as, without limitation, negligence. The Seller further represents that the weights, measures, sizes, legends, and/or descriptions printed, stamped or howsoever attached or referring to the merchandise described herein are true and correct and conform to and complies with said laws, rules, and regulations.

12. Any suits or proceedings by Seller against Buyer or its authorized Agent arising out of, relating to or in any way connected with the Order or the merchandise described herein shall be governed by the laws of the State of California, and shall be brought in a court of competent jurisdiction located in the City of Los Angeles, County of Los Angeles, State of California, and no other.

13. The terms and conditions set forth on the front and back of this Order, together with the terms and conditions set forth in Agent's "Vendor Agreement Relating to Compliance With Labor & Employment Laws" (VARCLEL), as well as "Buyer's Agency Agreement" (BAA) between Buyer and Agent, both of which agreements are incorporated herein by this reference, constitute the entire agreement between the parties concerning the matters described herein, and shall prevail over any written or printed matter appearing with any confirmation, invoice, statement and other form used by Seller. None of the terms or conditions of this Order, or the VARCLEL, may be waived or modified orally or in any manner other than by a written instrument signed by an authorized officer of Buyer.

14. No officer, employee or agent of Buyer is authorized to purchase any merchandise other than first grade merchandise. Accordingly, any Order or shipment by Seller of/for "odd lots," "job lots," "as is," "irregularities," "slightly damaged," "mis-marked," "bad fits" and the like, shall be void and unenforceable against Buyer.

15. Seller guarantees that merchandise to be delivered pursuant to this Order shall conform to the specifications set forth herein. Once delivered, the merchandise described herein shall be subject to Buyer's inspection and approval within a reasonable time after delivery and, if all specifications are not fully met, any non-conforming merchandise shall be subject to chargebacks and/or retrieved by Seller at Seller's sole expense. In such event, Buyer shall pay only for the portion of the merchandise retained, if any, at the PO price on a pro rata basis. The determination whether merchandise delivered conforms to Buyer's specifications shall be made solely by Buyer. Seller agrees that Buyer shall be under no duty to inspect goods before resale, and that the warranties, express or implied, shall survive inspection, acceptance and payment by Buyer and Buyer's customers.

16. Seller understands and agrees that time is of the essence in filling this Order. All merchandise described herein must be received on or before the date specified as "In-House Date," and if not so received by same date, Buyer reserves the sole right to reject any and all merchandise thereafter received and to require Seller to retrieve such rejected merchandise at Seller's sole expense. Acceptance of any part of the Order shall not bind Buyer to accept the entire Order or any future shipment, or deprive Buyer of the right to return merchandise already accepted.

17. Seller and Buyer agree that if any provision shall be deemed invalid (by a court of competent jurisdiction) due to its scope or breadth, such provision shall be deemed valid to the extent of the scope or breadth permitted by law. Invalidity or narrowing the scope of any term or condition hereof shall not affect the validity, legality or enforceability of the remaining terms or conditions.

18. If Seller sells the same kind or type of merchandise as that described herein to any other person or entity at a lower price and/or on more favorable terms and/or conditions than those set forth herein before delivery to Buyer of the merchandise described herein, Seller agrees to allow Buyer the same price and/or conditions. In addition, if any legitimate competitor of Seller offers to sell the same merchandise described herein at a lower price and/or on more favorable terms and/or conditions before the merchandise described herein has been delivered to Buyer, Seller agrees either to meet the price, terms and/or conditions of such competitor or to accept Buyer's cancellation in whole or part, of the Order.

19. The merchandise described herein is intended for the exclusive use of Buyer. Seller shall not offer for sale, sell, distribute or give away (whether directly or indirectly) to any other person or entity: (1) any merchandise and/or design pattern that is based on the same or similar styles, designs, patterns and/or color selections as the merchandise described herein; (2) any merchandise that resembles or is a facsimile of the merchandise described herein; or (3) any additional, surplus or rejected merchandise manufactured or delivered pursuant to this Order without first obtaining the written authorization of Buyer. Seller agrees to require any other entity with which it contracts in connection with filling this Order to agree to provisions and terms identical in substance in this Order.

20. Seller hereby warrants it shall not in any way manufacture, offer for sale, sell, distribute, give away or use Buyer's labels or other intellectual property (including without limitation, logos, trademarks, copyrights and patents). Seller shall be liable for any and all damages incurred by Buyer in connection with any breach of this provision, including without limitation attorneys' fees and court costs.

21. Buyer and Seller agree that they have had the opportunity to review the terms and conditions set forth herein and to consult with legal counsel before signing this Order, and that the terms and conditions set forth herein are reasonable. The language of this Agreement shall not be construed for or against either Buyer or Seller. Each and every covenant, term, provision and agreement contained herein shall be binding upon and inure to the benefit of the successors and assigns, if any, of Buyer and Seller.



**Christine Choi < christine.choi@novelintusa.com>**

---

## REVISED SOA
1 message

---

**Nicole Kim < nicole@eztoship.com>**                              Fri, Jan 11, 2013 at 12:00 PM
To: scott.lee@novelintusa.com
Cc: christine.choi@novelintusa.com, Harriet F21 <harriet.l@forever21.com>, pillartranslax@eztoship.com

안녕하세요,

지난 1/4일에 결제해주신 $42,116.84(CHECK# 2088)에 대해서는 DELIVERY완료되는데로 INVOIC INPUT
후에 PAID처리해드리도록하겠습니다.

REVISED SOA 금액 $1,603,.120.18 (NOVELINT) + SL TRADE $70,108.88 – CHECK# 2088 $42,116.84 =
**$1,631,112.22 (TOTAL DUE AS OF JAN 11, 2013)**

1/4일 이후 결제가 전혀안되고있어 저희도 내부적으로 자금사정이 많이 않좋습니다.  결제스케줄 어떻게 예
상하고 계신지 알려주시면 감사하겠습니다.


B.rgds.

Nicole Kim


Pillar Trans California

18726 S. Western Ave., Suite 317

Gardena, CA 90248

Tel: 310-767-1010

Fax:310-767-1110

Gmail: nicole@eztoship.com or pillartranslax@eztoship.com


***Grace period for ISF (10+2) ended on September 30, 2010.  Failure to comply with this
regulation may result in penalties from $5,000-$25,000 per shipment. We "Pillar Trans

2088

11-35/1210 CA
91467

NOVELINT INC
4322 WILSHIRE BLVD STE 105
LOS ANGELES, CA 90010

1/4/13

$ 42116.<u>94</u>

pillar   trans california

Forty two thousand one hundred sixteen

Bank of America

ACH R/T 121000358

⑈121400035811 0003531267801⑈ 2088

Paid From  NOVELINT, INC.                          Check No.: 2088          Issue Date :  01/04/13

| Invoice No. | Date/GL No | Reference No. / GL Description | BL No / Description | Amount |
|---|---|---|---|---|
| PINV-26034 | 12/26/2012 | POI-269606 | UJPNH1212001 | 4,061.20 |
| PINV-26035 | 12/26/2012 | POI-269607 | TCILS005167 | 1,322.50 |
| PINV-26042 | 12/26/2012 | POI-269610 | HCMLAX123092 | 1,552.76 |
| PINV-26044 | 12/26/2012 | POI-269612 | HAN12S1207 | 4,055.73 |
| PINV-26053 | 12/26/2012 | POI-269618 | PTQD120124 | 7,650.84 |
| PINV-26058 | 12/26/2012 | POI-269621 | ZMTF21204767 | 5,212.17 |
| PINV-26066 | 12/27/2012 | POI-269628 | PTQD120127 | 1,399.43 |
| PINV-26069 | 12/25/2012 | PAI-261368 | 001232 | 837.95 |
| PINV-26070 | 12/26/2012 | PAI-261369 | SAM-20122084 | 656.55 |
| PINV-26071 | 12/26/2012 | PAI-261370 | HCM121246 | 991.49 |
| PINV-26079 | 12/30/2012 | POI-269636 | TCILS005212 | 872.61 |
| PINV-26080 | 12/30/2012 | POI-269637 | ZMTF21204764 | 4,527.07 |
| PINV-26081 | 12/30/2012 | POI-269638 | ZMTF21204804 | 3,492.00 |
| PINV-26092 | 12/30/2012 | POI-269644 | TCILCAN001722 | 909.18 |
| PINV-26093 | 12/31/2012 | POI-269645 | TCILS005215 | 4,575.36 |
|  |  |  | Total Amount | 42,116.84 |

**PILLAR TRANS CALIFORNIA.**
18726 S WESTERN AVE. STE317
GARDENA CA 90248
TEL: 310-767-1010  FAX: 310-767-1110
EMAIL: pillartranslax@eztoship.com



**PAST DUE INVOICE**

| INVOICE NO | INVOICE DATE |
|---|---|
| PINV-26080 | Dec-30-2012 |
| **TERMS** | **DUE DATE** |
| | Dec-30-2012 |

| BILL TO | SHIP TO | CUSTOMER ID : 411052 |
|---|---|---|
| NOVELINT, INC.<br>4322 WILSHIRE BLVD. #105<br>LOS ANGELES, CA 90010<br>TEL : 323 934-0512  FAX : 213 537-0380<br>ATTN : JOOHWAN LEE | FOREVER 21<br>3880 N. MISSION RD.<br>LOS ANGELES, CA 90031<br>TEL : 213-741-5100 ext. 3732 | |

| | | | | |
|---|---|---|---|---|
| OUR REF. NO | : POI-269637 | VESSEL NO | : | HYUNDAI SINGAPORE V. 053E |
| YOUR REF. NO | : 12056104 | P.O.L. / ETD | : | DJAKARTA,JAKARTA,TANJUNG |
| MASTER B/L NO | : HDMUJTWB0270694 | P.O.D. / ETA | : | LOS ANGELES,CA / 12-30-2012 |
| HOUSE B/L NO | : ZMTF21204764 | F. DEST. / ETA | : | LOS ANGELES,CA / 12-30-2012 |
| SHIPPER | : PT. SABENA CIPTA | COMMODITY | : | LADIES KNIT TOP / SSLV |
| CONSIGNEE | : KUKDONG CORPORATION | PKGS | : | 1340 CTNS |
| NOTIFY | : FOREVER 21, INC. | KGS / LBS | : | 7,147.45 / 15,757.27 |
| | | CBM / CFT | : | 31.658 / 1,118 |
| CARRIER | : HYUNDAI MERCHANT MARINE CO., LTD. | CNTR. NO. | : | BMOU4151305 |
| Carrier Book# | : | | | |

| DESCRIPTION OF CHARGES | RATE | QTY | AMOUNT |
|---|---|---|---|
| OCEAN FREIGHT CHARGE | 2,763.000 | 1.000 | 2,763.00 |
| ISF CHARGE | 25.000 | 1.000 | 25.00 |
| HANDLING CHARGE | 65.000 | 1.000 | 65.00 |
| INSURANCE PREMIUM | 3,044.286 | 0.250 | 761.07 |
| PO HANDLING CHARGE | 25.000 | 1.000 | 25.00 |
| DELIVERY ORDER FEE | 25.000 | 1.000 | 25.00 |
| PROOF OF DELIVERY FEE | 50.000 | 1.000 | 50.00 |
| CONTAINER DRAYAGE FEE | 275.000 | 1.000 | 275.00 |
| CLEAN TRUCK FEE | 80.000 | 1.000 | 80.00 |
| PRE PULL CHARGE | 135.000 | 1.000 | 135.00 |
| CHASSIS FEE | 25.000 | 3.000 | 75.00 |
| STOPOVER CHARGE | 105.000 | 1.000 | 105.00 |
| STORAGE CHARGE 1 DAY | 35.000 | 1.000 | 35.00 |
| WAITING CHARGE 2:30PM-5:30PM | 45.000 | 2.000 | 90.00 |

| | | |
|---|---|---|
| | TOTAL DUE | 4,509.07 |
| 12056104   LADIES KNIT TOP / SSLV | PAID AMOUNT | 0.00 |
| | PLEASE PAY THIS AMOUNT | 4,509.07 |

| MEMO | : |
|---|---|

| REMARK | : |
|---|---|

**Thank you for using our service !**

Young wook Jo

**PILLAR TRANS CALIFORNIA.**                    **PREPARED BY**

1    EXHIBIT D
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## GOLBERT & ASSOCIATES

ONE BUNKER HILL, EIGHTH FLOOR
601 WEST FIFTH STREET
LOS ANGELES, CA 90071-2094

T: (213) 891-9841
F: (213) 623-6130
www.golbertlaw.com

September 13, 2013

*Via Certified Mail and e-Mail to: ken@ralidislaw.com*

Kenneth W. Ralidis, Esq.
Law Offices of Kenneth W. Ralidis,
  a professional law corporation
3435 Wilshire Blvd., 27th Floor
Los Angeles, CA 90010

Dear Mr. Ralidis,

   We represent Kukdong Corporation, a South Korean company.  We took note of the extensive "research" referenced in your letter of the 20th, *ult.*, addressed to Mr. Sang Ki Byun, President of "Kukdong Inc." (*sic*), which, amongst other things, did not uncover the fact that the client which you claim to represent, Pillar Trans California, Inc., is not registered in the state of California, either as a domestic company or as a foreign company authorized to do business in this state.  As I am sure you are aware, the use of "Inc." in a dba is expressly prohibited in California, with consequences that can be severe.  We can only assume that Network Shipping International, Inc., which has registered Pillar Trans California *as a d.b.a.* (hereinafter "Network Shipping"), is your client.  In a surfeit of caution, however, since we are not at all certain who your client is, we have sent a copy of this letter to Network Shipping.

   We are also sending a copy of this letter to Dolse Trucking, where the goods are physically located, demanding the release of the goods, since many of the potential liabilities attaching to Network Shipping could also attach to them.

   By this letter, we hereby demand that Network Shipping (and Dolse Trucking) release the goods described in Zimmoah Bill of Lading No. AMTF21204764, dated December 02, 2012 to Kukdong Corporation or its expressly designated representative.  Kukdong Corporation is listed as the consignee, has the original bill of lading and has good title to the goods.  Network Shipping's refusal to release the goods amounts, among other things, to conversion, fraud, and interference with contractual relations.  Our client has been damaged by Network Shipping's refusal to release the goods and intends to seek compensation from Network Shipping.  Further, Network Shipping was paid for its services over <u>eight</u> months ago, yet it refuses to release the goods (See copy of check and invoice in Exhibit A, attached).

Law Offices of Kenneth W. Ralidis
a professional law corporation
September 13, 2013
Page 2

  The law is well settled, your "research" notwithstanding. At least as far back as 1871, the United States Supreme Court has held that under a bill of lading, the title to the goods is in the consignee (*The Delaware*, 81 U.S. 579 (1871)). Since then, courts, statutes and commentators have only affirmed this principle. (*See, e.g.*, *Associated Metals & Minerals Corp. v. S/S Jasmine*, 983 F.2d 410, 413 (1993); *BII Finance Company Ltd. v. U-States Forwarding Services Corp.*, 95 Cal. App. 4th 111, 119 (2002); 46 U.S.C. 1300 and 1301(b) (codifying the Carriage of Goods by Sea Act); 46 U.S.C. 30701 (codifying the Harter Act), the Hague-Visby *Rules*—the Hague Rules as Amended by the Brussels Protocol 1968 at Article I(b); the California Commercial Code Sections 7302(b), (c) and 7502(a)(2); Matthew Bender & Company, Inc., *Goods in Transit*, Section 2.07 (2013) ("The bill of lading serves as a document of title that will permit the buyer to o)btain possession of the goods"); Gilmore & Black, *The Law of Admiralty* (2d ed. 1975) Section 3-1, 3-4, pp. 93-94, 96-98 (bills of lading reflect title in the goods being shipped by a carrier); among others.

  Network Shipping has no title to or interest in the goods. It has no right to hold the goods when the owner of title (Kukdong Corporation) requests the release of the same. In fact the California Commercial Code in Section 7502(a)(3) explicitly gives Kukdong Corporation, as the holder of both title to the bill of lading (see Cal. Com. Code §7502(a)(1)) and the goods (see Cal. Com. Code §7502(a)(2)) "...rights to goods delivered to the bailee after the [bill of lading] was issued." By continuing to hold the goods, Network Shipping is liable under a variety of torts, including conversion. In addition, Network Shipping has stepped in the shoes of the issuer (Cal. Com. Code §7302(b)), and thereby is potentially liable for any damages suffered by the issuer, including legal fees (Cal. Com. Code §7302(c)(1) and (2)). Furthermore, even if Network Shipping had a lien on the goods (which it most certainly does not), it could only be for charges related to <u>these</u> particular goods (Cal. Com. Code §7307(a) — and all charges have already been paid – over EIGHT months ago) and any possible lien would be lost by Network Shipping's unjustifiable refusal to deliver the goods (Cal. Com. Code §7307(c)).

  For the record, Kukdong Corporation is a publicly traded company with reported sales last year of over US$120 million. Its clients include Columbia, Forever 21, Hema, Nautica, Nike and Northface. To suggest that Kukdong Corporation is the alter ego of anyone is patently absurd and certainly not supported by the facts. Kukdong Apparel America, Inc. is a registered California corporation (unlike *Pillar Trans California, Inc.*) that is wholly owned by Kukdong Corporation It is a separate legal entity with its own management, books, and business. Novelint, Inc., as far as we know, is a company registered to do business in California. It has no cross-ownership or management with either Kukdong Corporation or Kukdong Apparel

Law Offices of Kenneth W. Ralidis
a professional law corporation
September 13, 2013
Page 3

America, Inc.   Whether or not Network Shipping has a dispute with Novelint, Inc. over past services and/or business dealings has nothing to do with the goods covered by the bill of lading in question or with Kukdong Corporation The various sections of the California Commercial Code which you cite apply to "sellers" and "buyers" of goods (as even a cursory reading of Cal. Com. Code §2705, among others, would reveal—see, *e.g.*, §2705(3)(a): "To *stop delivery the seller must so notify as to enable the bailee by reasonable diligence to prevent delivery of the goods*). With respect to the goods subject of your writing, neither is Network Shipping the "seller" nor is Novelint, Inc. the "buyer." Or, is it the case that Network Shipping is admitting to attempting to sell goods which it does not own?  According to your letter, Network Shipping is not in privity of contract with any of the parties you referred as "seller" or "buyer" or otherwise, except, according to your writing, as a provider of services to Novelint, Inc.

It should thus be clear to anyone with even a cursory knowledge of the facts, that the suppositions presented by you as *fact* are: (i) wrong; (ii) irrelevant to Kukdong Corporation's goods being released; and (iii) fly in the face of the specific statutory language.

Following on what has been said, we will require your earliest confirmation that Network Shipping and Dolse Trucking will release the goods specified in the operative bill of lading to Kukdong Corporation or its expressly designated representative, such confirmation to be received by us within 10 business days of the date of this letter or Kukdong Corporation will have no choice but to seek redress through the legal avenues open to it.

Yours faithfully,

Albert S. Golbert

Encl.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT E



Albert Golbert <albert@golbertlaw.

# Kukdong Corp Korea demand of Pilar Trans California

**ken@ralidislaw.com** <ken@ralidislaw.com>          Thu, Sep 26, 2013 at 1:36 PM
To: Nadia Akaweih <nadia@golbertlaw.com>, Albert Golbert <albert@golbertlaw.com>

Dear Mr. Golbert and Ms. Akaweih:

I have received your two emails. Unfortunately, I have been out of the state in Arbitration for 1½ weeks. I have not been able to respond substantively to emails, and I have barely had the time to review your communications, much less to research the factual and legal contentions in them. My receptionist did sign for your letter about 10 days ago, but I have not been able to review it until today.

Preliminarily, since you are aware that my firm represents Pilar Trans California (which you have correctly identified as Network Shipping International, Inc. dba Pilar Trans California), your recent communication directly to the client violates the Rules of Professional Responsibility. .Please refrain from any further direct contact to my client. I am not looking to make any issue of this whatsoever.

I only have just gotten back into the office, so I cannot give your letter the full response it merits. But I can dispense with the first issue raised in the 9/13/13 letter, which is a collateral non-issue of Pilar Trans' status. As you know, the Pilar Trans name does not appear as a corporation in any commercial documentation. The mere usage, in error (my error or typo) in my letter of an "Inc." does not merit any of the inferences raised in Mr. Golbert's letter. The collateral "issue" is not relevant to the issues at hand.

In any case, I need time to respond to the factual and legal contentions you raised. In keeping with your most recent letter's reference to and inference that you prefer a "conciliatory approach", I will try, in responding to your letters, to avoid overly zealous and perhaps hyperbolic language such as "the suppositions presented by you as fact are: (i) wrong; (ii) irrelevant ...", etc.; and "is it the case that Network Shipping is admitting to attempting to sell goods which it does not own"; and "it would now appear that we have assumed facts not in evidence"; and "conversion is a per se violation of law", etc.

I understand zealous advocacy. I understand belief in a client's position as to its relationships and the facts. I even appreciate strong advocacy of a legal position. Obviously, we have both been lawyers long enough not to let strong language influence a more thorough legal, factual and contextual analysis.

My client and I did quickly discuss the issue of payment for this shipment, and I do need to correct a factual error at this early stage. In your first letter, it was contended that all of the Pilar Trans charges were paid for (and a copy of Novelint check № 2088, drawn on its Bank of America account number 000353126780, in the sum of $42,216.84, dated January 4, 2013, was attached). That payment was for the original pick-up/delivery only.

However, there are charges associated with Kukdong's instructions for **pick up and storage, in the amount of $3,136.40 (for storage up to the end of August 2013), which have been invoiced by which have not yet been paid for by either Novelint or Kukdong.**

In this context, I understand that the particular order in issue was delivered to Forever21 on 1/7/13 by my client. Due to poor quality, Forever21 notified Kukdong that they would run a test sale against the merchandise and will make decision to accept or reject or accept the order, but on February 23, 2013, Forever21 notified Kukdong that they were rejecting the merchandise.  At that point, Kukdong instructed Novelint to arranged pick up from Forver21, and Kukdong and Novelint instructed my client to pick up the merchandise from Forever21 on March 6, 2013; but they did  not ask for it to be delivered to Kukdong.  In accordance with Kukdong's and Novelint's requests, my client picked the goods from Forever 21 on March 13, 2013 and complied with the instructions to store the goods.

Your September 13, 2013 letter implies that that my client has been withholding the goods for 8 months despite payment.  I hope you now see that my client has not been withholding goods for any such length of time and has not been fully paid.  It was not until very recently (early August) that Kukdong, through Kukdong Apparel (America), Inc., a California corporation, contacted my client directly, with its request to release the merchandise to Novelint, for a less-than-value sale.  Until then, neither Kukdong Corporation (Korea), nor Novelint had contacted Pilar Trans about the shipment or its storage, for which instructed pick-up and storage charges were incurred in the sum of $3,136.40 through August, 2013. My client indicates that it retains communications from Kukdong requesting that Pilar Trans to hold the merchandise until recently.

My client has never intended nor ever hinted or implied that it would ever sell the merchandise itself.

So I obviously have to tread cautiously, and despite my belief that your firm is strongly convinced of the facts, there are always some additional facts to consider.  I respect that your firm has a job to do and is going about that job.  Please respect that I have an investigation to conclude, which was prompted by a contact letter not from Kukdong Corp, a South Korean company, but, rather, from the ostensibly separate Kukdong Apparel (America), Inc. (a California company).  In that letter of early August 2013 (which is the letter I referenced in my August 20, 2013 letter to both Kukdong entities), signed by "Caz" Byun, Kukdong Apparel (America), Inc. was identified as "a branch office of Kukdong Corporation in Korea".  The Kukdong entities have made different factual representations to my client than they have to your firm about their ownership interests and about the separateness of the legal entities.  Whether one or the other is a "branch", or a distinct entity, or an "alter ego" is not yet clear.  Moreover, legal theories are not limited to alter ego, but more particularly would likely include joint venture, as all of the owners of Kukdong Corp.

(Korea), Kukdong Apparel (America) and Novelint are related by blood and/or marriage.

Obviously, I do not expect you to concede that any of the connections we have posited are factually or legally accurate. I presume that you will conduct your own further investigation given the representations in the "Caz" Byun letter and given some of the factual and legal connections I shared with them in my own August 20 letter. I don't think that it's unreasonable to seek a bit more time to establish the facts and to research the law into all theories and scenarios. After all, your client is asking my client to deliver goods (which delivery charges would have to be paid for, presumably by Novelint, which clearly is not a solvent company and which ethically should not be incurring any more debts under such circumstances) to a company which owes my client over $1.4 million, all on goods as to which Kukdong (Korea) was the ostensible consignee.

In such a context, the relationships between the two Kukdong entities, Novelint and their principals are not without legal and factual relevance. Any good lawyer would at least consider the fact that no request was made for delivery of the goods (goods which both Kukdong (Korea) and Novelint had requested that Pilar Trans pick up and store) until Pilar Trans started requesting more urgently that Novelint make payments on the $1.4 million debt to my client. Novelint and its principal made repeated promises to do so, and because of their commercial history, Pilar Trans was remarkably patient and restrained. Any good lawyer would not ignore the familial and business relationships among the three companies. But my firm has also acted with quite a bit of restraint, and would ask that your client and your firm do the same.

In the bigger picture, you indicate that Kukdong Corporation is a huge company with last-year sales of over $120 million. The value of the shipment in issue is not a large amount in this context (but I am not saying that it is inconsequential), and I would ask you to consider that the delivery matter is one which might be resolved with somewhat less stridency. Therefore, I am asking you to give me a little time to review your letter, for me to conduct some legal research, and to respond in an amicable manner which sets forth a position based upon careful and considerate review and consideration of all parties' positions and contentions. I think I will need two weeks to fairly and fully respond to your letter, as I have several depositions and mediations upcoming, as well as prior-existing deadlines on law and motion. I want to very carefully consider the facts and analysis in your letter to give them all of the consideration which you would expect them to be given.

I believe that we can work together to resolve these disputes in a mutually satisfactory manner. Perhaps Mr. Byun can prod his son-in-law to make some significant payments, as he had promised to do, on the very significant debt owed to my client. Perhaps we can all counsel patience to our clients so that all of the matters can be resolved amicably. I would think that even if the matters are not legally related, and even if all of the analysis in your

September 13 letter, arguendo, was correct, it would still be in all of the parties' best interests to reach agreement as between all of the concerned parties. In such manner, no litigation need be instituted by anyone.

I look forward to your carefully considered response.

Truly,

Ken Ralidis, Esq.

Law Offices of Kenneth W. Ralidis
a professional law corporation
3435 Wilshire Blvd., 27th Floor
Los Angeles, California 90010
ken@ralidislaw.com
www.ralidislaw.com

The information contained in this email and any attached documents are intended only for use of the individual or entity named above, and may contain information that is privileged, confidential or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by responding to this email and immediately deleting this message. Thank you.

IRS CIRCULAR 230 DISCLOSURE: In order to comply with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in, omitted from, or implied by this communication (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

PRIVILEGED AND CONFIDENTIAL COMMUNICATION: This e-mail, and any attachments thereto, is intended only for use by the named addressee(s), and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are notified that any dissemination, distribution or copying of this e-mail, and any attachments, is strictly prohibited. If you have received this e-mail in error, please immediately: (1) notify the office at (213) 251-5480; (2) permanently delete the original and any copy of any e-mail; and (3) permanently delete any attachments, and any printout thereof.